IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
SEP - 8 2025
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ____________
DEPUTY CLERK

MICHELLE BARRIENTES VELA, §

Plaintiff,

§

v. §

§

BRADLEY MAURICE FREEMAN, §

Individually Capacity §

SA26CV5752XR

and RYAN RIOS ESCOBEDO, § Cause No.____________

Individually Capacity §

Defendants. §

JURY TRIAL DEMANDED

PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

NATURE OF THE ACTION

1. Plaintiff Michelle Barrientes Vela brought this civil-rights action under 42 U.S.C. § 1983 against two law-enforcement officers for their respective personal participation in an unsupported and materially misleading investigation and resulting criminal prosecution.

2. Defendant Bradley Maurice Freeman, then a Texas Ranger, allegedly initiated, directed, or materially advanced the investigation while disregarding, misstating, failing to preserve, or failing to reconcile evidence that contradicted the prosecution theory.

3. Defendant Ryan Rios Escobedo, then a Bexar County Sheriff's Office deputy assigned to unit 2C11, authored and entered a BCSO General Report that identified him as badge 34967 and stated, "I was dispatched to Rodriguez Park" and "Upon my arrival Jesus Reyes stated that he was harassed by Michelle B. Vela." Plaintiff alleges those firsthand-response assertions were materially false or misleading because contemporaneous AVL and internal-investigation records placed Escobedo several miles away and did not show his arrival at Rodriguez Park. The VisiNet record separately displays a CAD entry classified as a 911 Check/Hangup, received as an SAPD Transfer, and closed as an ABANDONED 911 CALL, but does not establish that the original hang-up originated from Rodriguez Park or supplied the information in Ryan Rios Escobedo's narrative. Plaintiff alleges Escobedo's report was later used to initiate or materially advance the legal process against her.

4. Plaintiff joins the two officers in one action because she alleges on information and belief that Ryan Rios Escobedo's ( Bexar County Sheriff Deputy) General Incident Report, BCSO-2019-0749798, or information derived from it was received and used in Bradely Freeman's investigation and later legal process, creating common factual questions concerning the report's creation, transmission, use, materiality, and causal effect. Plaintiff Michelle Barrientes Vela does not allege an agreement or conspiracy merely from parallel involvement and seeks to hold each Defendant liable only for his own proven personal conduct.

**JURISDICTION AND VENUE**

5. This Court has federal-question jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiff asserts claims under the United States Constitution and 42 U.S.C. § 1983.

6. Plaintiff presently seeks retrospective monetary relief for completed conduct by Defendants in their individual capacities. Plaintiffs do not presently seek declaratory or injunctive relief based on an ongoing violation of federal law.

7. Plaintiff seeks damages and other relief allowed by law.

8. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Bexar County, Texas, within the San Antonio Division of the Western District of Texas.

**PARTIES**

9. Plaintiff Michelle Barrientes Vela, identified in certain underlying criminal and appellate records as Michelle Barrientes, is a resident of Bexar County, Texas. At the relevant time she served as the Elected Bexar County Constable of Precinct 2. On October 3, 2024, the Eighth Court of Appeals reversed her conviction in Cause No. 2021-CR-4408 and rendered a judgment of acquittal on both counts. The Texas Court of Criminal Appeals refused the State's petition for discretionary review in PD-0961-24 on February 19, 2025, and the appellate mandate issued April 9, 2025. Orders of expunction were entered on June 24 and October 10, 2025, as described below.

10. Defendant Bradley Maurice Freeman was at all relevant times employed by Texas Ranger employed by the Texas Department of Public Safety ("DPS") and acting under

color of Texas law. He is sued only in his individual capacity for damages arising from his own alleged conduct.

11. Defendant Ryan Rios Escobedo was, on April 21, 2019, a Bexar County Sheriff's Office deputy assigned to unit 2C11. The BCSO General Incident Report identifies him as the reporting officer, author, and entering officer under badge 34967; the VisiNet Incident Detail Report identifies him as "Escobedo, Ryan (BCLE34967)." He is sued only in his individual capacity for damages arising from his own alleged conduct.

## A. RODRIGUEZ PARK AND THE INITIAL NARRATIVE

12. Bexar County Precinct 2 provided deputy security for certain events at Rodriguez Park for Bexar County, including private events involving pavilion reservations and alcohol-service requirements.

13. On or about April 21, 2019, an Easter event occurred at Rodriguez Park. News reports later alleged Plaintiff of "squeezing money" from Jesus Reyes for law-enforcement security and stated or implied that Plaintiff removed, displaced, or interfered with Sheriff's Deputies at the park. Plaintiff Michelle Barrientes Vela alleges that those public accusations were false and that no Bexar County Deputy involved in the disputed incident contacted her at Rodriguez Park on Easter Sunday.

14. Plaintiff denies that account. She alleges that no Bexar County Sheriff's deputy involved in the disputed information made contact with her at Rodriguez Park.

15. On June 24, 2019, Bexar County Constable Office Precinct 2 initiated Internal Investigation No. 2019-IA-000110 concerning a Bexar County Sheriff's Office report generated on April 21, 2019. The investigator compared VisiNet status entries with automatic-vehicle-location data and concluded that unit 2C11's recorded on-scene/arrival status did not match the unit's physical location. In a July 23, 2019, supplement, after obtaining dispatch audio, Bexar County Constable's Office Lieutenant Jeremy Miner's investigation concluded that 2C11 initiated the call for service, was nowhere near Rodriguez Park when the key card was requested, could not have been flagged down there, and knew exactly whom he intended to contact. Lieutenant Jeremy additionally inferred that 2C11 immediately went to an exact location "to meet/speak with Mr. Reyes." Plaintiff disputes that inference and alleges Ryan Rios Escobedo never met or spoke with Reyes.

16. Cpl. Vanessa Peña, badge 1228, reported that she worked a paid off-duty assignment in county uniform at Rodriguez County Park from 4:00 p.m. to 10:00 p.m. on April 21, 2019, Easter Sunday. Deputy Vanessa Peña wrote: "At no time during my assigned shift did I observe a Bexar County Sheriff patrol unit, nor did I see a uniformed Bexar County Sheriff Deputy on location or near the vicinity of the above listed location."

17. The reports and testimony of Cpl. Vanessa Peña, Deputy Cardova/Cordova, Jesse Reyes, and park personnel contain accounts that must be evaluated alongside the contemporaneous dispatch audio and AVL records. Plaintiff alleges that the contemporaneous records show no relevant BCSO (Bexar County Sheriff Deputies) arrival or contact at Rodriguez Park and contradict the later suggestion that Bexar

County Sheriff Deputy Ryan Rios Escobedo was dispatched there, arrived there, or spoke with Jesus Reyes. To the extent the sources conflict, the identity of each source and the precise sequence of communications remain matters for discovery.

## B. DEFENDANT RYAN RIOS ESCOBEDO'S REPORT AND CONTRADICTORY RECORDS

18. The VisiNet Incident Detail Report for BCSO-2019-0749798 displays "Rodriguez Park, 2060 Rodriguez Road" as the location associated with a CAD entry classified as "911 Check/Hangup," identifies the method received as "SAPD Transfer," and records the disposition as "ABANDONED 911 CALL." It identifies the assigned personnel as "Escobedo, Ryan (BCLE34967)." Ryan Rios Escobedo's General Report instead displays 2000 Rodriguez Avenue as the dispatch and incident address. Plaintiff does not allege that no 911-related CAD event existed. The records do not establish that the original hang-up originated from Rodriguez Park, concerned Plaintiff, supplied either Rodriguez Park address, or supplied the information later recorded in Escobedo's narrative.

19. Deputy Ryan Rios Escobedo's General Report identifies him as reporting officer, author, and entering officer under badge 34967, with a report and entry time of April 21, 2019, at 9:29 p.m. Its narrative states: "I was dispatched to Rodriguez Park for an information/ civil matter property call" and "Upon my arrival Jesus Reyes stated that he was harassed by Michelle B. Vela, and other constables in uniform." A dispatch recording transcribed in the July 23, 2019, supplement to Internal Investigation No. 2019- IA-000110 instead records unit 2C11 asking dispatch to "start me a key card for information at uuh Rodriguez Park" and assign unit 2S4. Based on the audio and location information, Lieutenant Jermery Miner concluded that 2C11 initiated the call, was nowhere near Rodriguez Park, could not have been flagged down there, and knew whom he intended to contact. Although Lieutenant Jeremy Miner inferred that 2C11 went elsewhere "to meet/speak with Mr. Reyes," Plaintiff alleges no such meeting or conversation occurred. The audio is identified with BCSO case 2019-BCSO-011826, whereas the VisiNet report bears BCSO-2019-0749798.

20. At trial, Jesus Reyes testified that someone from his party called SAPD (San Antonio Police Department) and that SAPD officers contacted him as he was leaving Rodriguez Park. RR12:91–95, as summarized in the State's appellate brief. Plaintiff personally observed Jesue Reyes leaving the park and, with her Chief Deputy Anthony Castillo, exited immediately behind him in a separate vehicle. Plaintiff observed no Bexar County Sheriff Deputies or San Antonio Police Officers' patrol vehicle, emergency lights, traffic stop, wave-down, or other law-enforcement contact involving Jesus Reyes. The presently reviewed records do not identify the alleged caller, originating number, San Antonio Police Department event number, responding SAPD officers, precise contact location, or transfer path into the Bexar County Sheriff Office records.

21. The July 23, 2019, supplement inferred that 2C11 immediately went to an exact location "to meet/speak with Mr. Reyes" after originating the call for service. Plaintiff disputes that inference and alleges Deputy Ryan Rio Escobedo never met or spoke with Jesus Reyes. The records presently available to Plaintiff do not identify an actual

meeting location or time, document a completed contact, contain a recording or contemporaneous interview note, or explain how Deputy Ryan Rios Escobedo obtained Jesus Reyes's identity, location, or the account later written as having been obtained "upon my arrival" at Rodriguez Park. Those facts require the complete internal-affairs file, AVL history, dispatch audio, communications, and native report metadata.

22. The BCSO General Report is authored and entered by Deputy Ryan Rios Escobedo; it is not merely the VisiNet Incident Detail Report. The displayed report does not identify a charged offense or state the elements of a criminal offense committed by Plaintiff. Based on the records presently available, Plaintiff has not identified an amend or supplement police report converting it into an offense report. The complete native RMS record, classification and revision history, supplements, approvals, access logs, and transmission records are within BCSO's custody or control and will establish the document's complete handling history.

23. Texas Ranger Bradley Freeman's September 20, 2019, affidavit states that a BCSO incident report concerning Rodriguez Park caused him to request Bexar County Constable's Office records. Texas Ranger Bradley Freeman described the same event Jesus Reyes, harassment accusation against Plaintiff, Michelle Barrientes Vela, the security payment, intimidation, and the asserted requirement that Jesus Reyes left early. Those matching people, subject matter, and sequence support Plaintiff's allegation on information and belief that Texas Ranger Bradley Freeman received and used Deputy Ryan Rios Escobedo's General incident report. Report, BCSO-2019-0749798, or information derived from it. The affidavit does not state the incident number or transmission path; those details remain subject to the certified warrant file, Ranger evidence index, BCSO audit history, and Bexar County District Attorney's intake notes.

24. Available records show that Deputy Ryan Rios Escobedo used a law-enforcement information system to access or run Plaintiff Michelle Barrientes Vela's identifying information in connection with the Rodriguez Park alleged incident. The records associate the activity with Deputy Ryan Rios Escobedo, his assigned unit, credentials, terminal, or identifying information. Plaintiff alleges that the access and resulting information were connected to Deputy Ryan Rios Escobedo's creation of the disputed incident record and subsequent investigation concerning Plaintiff. The complete native audit history will establish the specific system used, data and time, user and terminal identifiers, stated purpose, information returned, and any subsequent dissemination.

25. Plaintiff is a licensed Texas peace officer, former elected Bexar County Constable, and former law enforcement Training Administrator. Her experience supplies context for the unexplained relationship among the 911-related entry, SAPD transfer notation, Deputy Ryan Rios Escobedo's key-card request, unit location evidence, absence of a documented witness contact, and unverified transmission path requires examination; native records must establish what occurred.

26. Plaintiff does not allege that a reporting-policy or database-policy violation alone establishes a constitutional claim. The constitutional issue is whether Deputy Ryan Rios Escobedo knowingly or recklessly created, adopted, communicated, or caused

the use of materially misleading information that foreseeably influenced legal process and Plaintiff's loss of liberty.

27. Required discovery includes the native Incident Detail Report and all versions; CAD, dispatch, MDT, GPS, AVL, and RMS records; applicable user, terminal, device, and ORI identifiers; any query, access, purpose, or transaction codes that exist; any associated return, audit, print, export, or dissemination history; supervisor review records; communications; relevant training and certification records; and The Bexar County District Attorney's Office and Texas Department of Public Safety (DPS) intake records showing whether and how Escobedo's report or information derived from it entered Freeman's investigation.

## C. DEFENDANT BRADLEY FREEMAN'S INVESTIGATION AND WARRANT AFFIDAVIT

28. Texas Ranger Bradley Freeman testified that he became involved in the investigation of Bexar County Constable Precinct 2 on May 9, 2019. He stated that the Texas Rangers require a request from the local Bexar County District Attorney's office before investigating a public official; that he received a letter from the Bexar County District Attorney's Office; and that he forwarded the letter and a memorandum through his chain of command and obtained approval to investigate. The District Attorney requested letter, Freeman memorandum, and written chain-of command approval will authenticate the investigation's initiation, stated scope, and authorization; those underlying records remain within agency custody or control.

29. Texas Ranger Bradley Freeman obtained a grand-jury subpoena dated June 11, 2019, and personally served it on Plaintiff at the Bexar County Constable's Office Precinct 2. The following day, Plaintiff contracted the Texas Ranger for clarification, and Freeman explained that he was requesting Rodriguez Park security agreements and scheduling information.

30. Texas Ranger Bradley Freeman subsequently obtained an additional grand-jury subpoena dated August 20, 2019, the subpoenas requested specified categories of Rodriguez Park records, including security scheduling information. They did not request documents identified as "cash logs"

31. The security agreements, receipts receipt logs, and cash logs were separate categories of records maintained for different purposes. Plaintiff alleges that Texas Ranger Bradley Freeman later changed or conflated the terminology for those records during the investigation and prosecution, creating the materially misleading impression that requested records had been concealed, falsified, or withheld.

32. Susan Tristan served as the Bexar County Constable's Office Precinct 2 records custodian and maintained the relevant receipt books, cash logs, and original records in her work area or possession. Plaintiff alleges that she did not possess or control the original records. Susan Tristan created or maintained entries in those records and provided copies directly to the Texas Ranger Bradley Freeman. Those facts were

material to determine who possessed, created, maintained, or supplied the records and whether Plaintiff personally concealed, altered, destroyed, or falsified any records.

33. Susan Tristan called Freeman on June 12, 2019. The following day, she met Texas Ranger Bradley Freeman in Luby's parking lot on June 13, 2019, and provided him with copies of a receipt book and cash logs. On June 19, 2019, Susan Tristan met with Texas Ranger Bradley Freeman and an FBI agent's direction, Suan Tristan later carried a recording device into the Bexar County Constable's Office on three occasions. The FBI agent activated the device before each use and retrieved it afterwards.

34. Texas Ranger Bradley Freeman testified and acknowledged that an investigator should promptly document material witness interviews and preserve information bearing on both guilt and innocence. Plaintiff alleges that this standard was especially important because Texas Ranger Freeman relied heavily on information supplied by the custodian of record, while investigating Plaintiff.

35. Texas Ranger Bradley Freeman testified and acknowledged that Susan Tristan called him on June 12, 2019, and met him on June 13, 2019, when she brought copies of a receipt book and cash logs. The meeting was not recorded. When asked whether the custodian of record, Susan Tristan, said she had been shredding security agreements, Freeman answered that it was not noted in his report and that he did not think she told him.

36. The transcript further reflects that reports concerning the first two recording devices were assigned to Agent Rivera, while Texas Ranger Bradley Freeman documented a later device. Freeman personally provided a third recording device on July 24, 2019, and described a staged call intended to conceal Susan Tristan's cooperation and stimulate conversation with Plaintiff and Chief Deputy Anthony Castillo.

37. Freeman testified that he treated Susan Tristan, the Bexar County Constable's Office records custodian, as a confidential source, preferred not to record interviews with her, and did not obtain a written statement from her while she remained classified as a confidential source. The Texas Ranger Bradly Freeman also describes an accidental recording of one of the interviews with Susan Tristan as an oversight.

38. Plaintiff alleges that, before the formal subpoena response was assembled, Susan Tristan separately copied, delivered, or transmitted Bexar County Constable's Office Precinct 2 records or information to the Texas Ranger Bradley Freeman outside the formal production made through Plaintiff's attorney. Plaintiff does not allege on the present record that Susan Tristan removed the original records from their ordinary work location, that her separate delivery was itself unlawful, or that the subpoena-compliance deadline had expired. The original subpoena, return deadline, chain-of-custody records, and Freeman's receipt and evidence records must establish the timing and contents of each document stream.

39. These facts support particularized allegations concerning separate document streams, undocumented or incompletely documented witness contacts, recording-device custody, and the need to determine which records and statements Texas

Ranger Bradley Freeman received, preserved, transmitted, or omitted. They do not support blanket allegations that Freeman documented no witnesses.

40. On September 20, 2019, Texas Ranger Bradley Freeman signed and swore to a thirteen-page Affidavit for Search and Seizure Warrant concerning the Bexar County Constable's Office Precinct 2 at 7723 Guilbeau Road, San Antonio, Texas. The warrant proceeding was identified as Bexar County Cause No. 2019-W-1548. The warrant was issued and executed, and Texas Ranger Bradly Freeman 's affidavit contains the factual representations he personally submitted to establish probable cause.

41. Texas Ranger Bradley Freeman stated under oath that he initiated the investigation on May 9, 2019, and had reviewed local-media reports, police reports, witness information, the Bexar County Sheriff's Office incident report concerning Rodriguez Park, and records and statements obtained during his investigation.

42. In his September 20, 2019, affidavit the Texas Ranger Bradley Freeman stated, as a result of this Bexar County Sheriff Office incident report," he requested Bexar County Constable's Office Precinct 2's Rodriguez Park security records. Texas Ranger Bradly Freeman described the same Rodriguez Park security records, Jesus Reyes, the alleged harassment by Plaintiff, the security payments, alleged intimidation, and the assertion that Jesus Reyes was required to leave before his reservation ended. These matching facts support a reasonable inference that Texas Ranger Bradley Freeman received and used Deputy Ryan Rio Escobedo's General incident report, BCSO-2019-0749798, or information obtained from that report, when conducting his investigation and seeking legal process against Plaintiff.

43. Texas Ranger Bradly Freeman further swore that he personally served Plaintiff with the June 11, 2019, grand-jury subpoena; that Plaintiff contacted him on the following day June 12, 2019, seeking clarification; and that he told Plaintiff he sought information associated with a receipt, the security arrangement, and scheduling information.

44. Freeman attributed the central concealment allegations to Susan Tristan. He swore that Susan Tristan said Plaintiff took information home, removed cash logs, and directed substitution of an Excel spreadsheet that replaced officers' names with the number of officers working. Texas Ranger Bradley Freeman also swore that Susan Tristan provided him with additional cash logs on August 29, 2019.

45. The affidavit did not disclose that the four grand-jury subpoenas did not request documents called 'cash logs,' although Texas Ranger Freeman later testified that the subpoenas never asked for cash logs. Nor did the affidavit disclose that the security agreements, receipts, and cash logs were separately labeled and treated as distinct kinds of records. Id.

46. The affidavit did not disclose that Susan Tristan was the Precinct 2 records custodian; that the cash logs were her recordkeeping system; that she possessed the originals; or that she maintained them openly in a purple folder on or near her desk

47. The affidavit did not disclose that Susan Tristan had already provided Texas Ranger Bradley Freeman copies of the cash logs while retaining the originals as working copies; that she continued writing on the originals; that the additional writing

was attributed to Susan Tristan rather than Plaintiff; or that the originals and receipt books were found openly in Susan Tristan's work area during execution of the warrant.

48. The affidavit did not disclose that Susan Tristan allegedly told Texas Ranger Freeman the cash logs were not Plaintiff's system; that Susan Tristan could not identify who wrote certain disputed entries; that Susan Tristan had herself shredded security agreements before Plaintiff learned of the grand-jury process; or that the unrecorded June 13, 2019, meeting occurred when Susan Tristan brought cash logs to Texas Ranger Freeman even though the subpoena requested security agreements.

49. The affidavit also did not disclose that Plaintiff's attorney received the first production from Susan Tristan and delivered the requested security agreements, receipts, and other documents to the Bexar County prosecutor Dawn McCraw, or that the attorney—who had worked in the Bexar County District Attorney's civil section for approximately twenty to twenty-five years—did not understand the subpoenas to demand cash logs.

50. Corrected-affidavit theory. Plaintiff alleges that a truthful presentation would have stated that the subpoena did not request cash logs; the categories of records were distinct; Susan Tristan was the custodian of records, who possessed, copied, maintained, supplemented, and in some instances shredded the pertinent materials; copies had already been supplied to the Texas Ranger Freeman; the originals remained openly in Susan Tristan's work area; Plaintiff's attorney delivered the requested production; and the existing evidence did not identify Plaintiff as the author of the disputed entries. Plaintiff alleges these facts were critical to any inference that she concealed subpoenaed evidence or knowingly created false records.

51. Count One statutory-element correction. The first tried count arose under Texas Penal Code § 37.09(a)(1), which required proof that Plaintiff, knowing an investigation or official proceeding was pending or in progress, altered, destroyed, or concealed a record, document, or thing with intent to impair its verity, legibility, or availability as evidence. Plaintiff Michelle Barrientes Vela held that actual concealment was a distinct element and that the evidence was legally insufficient because the cash logs remained openly in Susan Tristan's purple folder, Tristan always knew their location, and Texas Ranger Freeman already possessed copies before the subpoena response was due.

52. Count Two statutory-element correction. The second tried count arose under § 37.09(a)(2), which required proof that Plaintiff made, presented, or used a record with knowledge of its falsity and intent to affect the course or outcome of the investigation or official proceeding. Plaintiff Michelle Barrientes Vela held the evidence legally insufficient because the State proved only a discrepancy between records, did not ask Deputies Peña or O'Neil who actually worked the May 25, 2019 assignment, did not establish that the handwritten cash-log information was false, and did not explain how Plaintiff intended unproduced records to affect the investigation.

53. Application for Freeman's affidavit. A corrected affidavit would not merely add general impeachment. It would state facts directed to the missing statutory elements: (a) for Count One, the records were never hidden from their custodian or removed from their known location, Texas Ranger Bradly Freeman possessed copies, and

the originals remained available in the ordinary work area; and (b) for Count Two, the identified discrepancy did not establish falsity, authorship of every entry, knowledge of falsity, or intent to affect the investigation. Plaintiff alleges that Freeman's personal receipt of the copies, repeated work with Susan Tristan, clarification of the subpoena, and knowledge of the records' location supports an inference that he knew or recklessly disregarded these qualifying facts when presenting the September 20, 2019, affidavit. The appellate insufficiency holding does not by itself establish Texas Ranger Bradly Freeman's state of mind or civil liability; his reports, notes, recordings, warrant file, and evidence packet must establish what he knew when he swore to the affidavit.

**D. LEGAL PROCESS, LOSS OF LIBERTY, AND FAVORABLE TERMINATION**

54. Texas Ranger Bradley Freeman's September 20, 2019, affidavit was a specific, non-testimonial probable-cause document personally authored and sworn to by Freeman. It caused the search and seizure at the Bexar County Constable's office. Texas Ranger Freemen's continuing investigation, evidence collection, and investigative submissions subsequently supplied material information used to obtain the January 23, 2020, indictment in Cause No. 2020-CR-0549A. Plaintiff thereafter surrendered at the satellite office and was taken into custody pursuant to the resulting legal process.

55. By the time Texas Ranger Bradley Freeman signed the September 20, 2019, affidavit, he had personally served the subpoena, clarified its requested categories, met repeatedly with Susan Tristan, received cash-log copies directly from her, and knew she was the source of the central accusation. Plaintiff alleges these personal acts support a plausible inference that Texas Ranger Bradley Freeman knew, or recklessly disregarded, that the omitted distinctions concerning subpoena scope, custodianship, possession, authorship, and continued availability were critical to probable cause.

56. Freeman nevertheless presented the BCSO incident narrative and Susan Tristan's accusations as affirmative probable-cause facts without disclosing the contradictory and qualifying information described above. Plaintiff alleges that, after removing the unsupported assertions and adding the omitted facts, the affidavit would not establish probable cause to believe that Plaintiff concealed subpoenaed cash logs or knowingly made or use false cash logs. The corrected affidavit would have showed that the subpoenas did not request cash logs, the original records remained openly with their custodian, Texas Ranger Bradley Freeman already possessed relevant copies, and the available information did not establish that Plaintiff created a false entry or knew that any entry was false.

57. On August 30, 2022, Freeman testified that his investigative conclusions included both tampering with evidence and official oppression, although the trial court had ordered that official oppression not be mentioned before the jury. On November 30, 2022, show-cause hearing, Texas Ranger Bradley Freeman acknowledged the violation but characterized it as a tired mistake. November 30, 2022, Contempt Hearing Judge Velia Meza found him in contempt, referred to the matter for final decision, and recommended a $500 fine and a course on testifying.

58. At the May 5, 2023, final contempt hearing, the court found that Texas Ranger Bradly Freeman and Lead Bexar County District Attorney's Office Prosecutor Dawn

McCraw had worked closely for years and were 'intertwined,' and found that Texas Ranger Bradly Freeman gave Dawn McCraw what he thought she wanted to hear. The court stated that the prejudice could not be undone, found beyond a reasonable doubt that Texas Ranger Bradley Freeman acted in willful and flagrant disregard of the order, and adjudged him in contempt. Plaintiff relies on these findings as evidence relevant to Bradley Freeman's knowledge and credibility, not as an independent constitutional violation based solely on his protected courtroom testimony.

59. At the May 5, 2023, final contempt hearing, visiting Judge Kevin O'Connell adjudged Texas Ranger Bradley Freeman in contempt and imposed a $500 fine. The reporter certified the record on June 27, 2023. Plaintiff cites this adjudicated disposition only for the limited purposes stated above and does not plead Texas Ranger Bradley Freeman's courtroom testimony itself as an independent basis for damages.

60. On January 23, 2020, a Bexar County grand jury returned the original true-bill indictment in Cause No. 2020-CR-0549A. Count II alleged that, on or about June 26, 2019, Plaintiff knowingly altered, destroyed, or concealed Rodriguez Park cash logs with intent to impair their availability in the grand-jury investigation. Count III(A) alleged alteration of those cash logs, and Count III(B) alleged making, presenting, or using Rodriguez Park receipt logs with knowledge of their falsity and intent to affect the investigation. The original indictment also contained aggravated-perjury and official oppression allegations that were not the two counts ultimately tried in Cause No. 2021-CR-4408.

61. On January 23, 2020, after the indictment was returned, Plaintiff voluntarily surrender at the satellite booking and magistrate office. Plaintiff Michelle Barrientes Vela was required to remove her business coat so that her arms and hands were exposed for handcuffing, handcuffed in front, shackled at the ankles, and brought before Judge Oscar Kaze to be magistrate. Media representatives followed, recorded, photographed, and questioned Plaintiff during the public courthouse hallway escort. Plaintiff, Michelle Barrientes Vela alleges that her custody, restraints, and resulting public humiliation were consequences of the legal process initiated and materially advanced by Defendants' actionable conduct.

62. On October 3, 2024, the Eighth Court of Appeals held that the evidence was legally insufficient on either count, reversed the conviction, and rendered a judgment of acquittal. *Barrientes v. State, No. 08-23-00113-CR (Tex. App.-El Paso Oct. 3, 2024, pet. ref'd) (mem. Op., not designated for publication).* On February 19, 2025, the Texas Court of Criminal Appeals refused the State's petition for discretionary review. The appellate mandate issued April 9, 2025. Plaintiff will authenticate this favorable termination through certified copies of the opinion, judgment, PDR-refusal notice, and mandate.

63. Two expunction orders address records arising from Plaintiff's January 23, 2020, arrest. First, on June 24, 2025, the 226th Judicial Criminal District Court granted an Order of Expunction in Cause No. 2025- W-01998 concerning Cause No. DC2021CR4408 and the tampering-evidence charge. The order expressly finds that the Eighth Court of Appeals acquitted Plaintiff Michelle Barrientes Vela of the tampering charges, that the mandate issued April 9, 2025, and that the Court of Criminal Appeals denied discretionary review. Second, on October 10, 2025, the 438th Judicial District

Court granted an Order of Expunction in Cause No. 2025CI12256 concerning the aggravated-perjury and official-oppression cases, including Cause No. DC2020CR0549A, DC2021CR4409A, DC2021CR4410A, DC2021CR4411A, and DC2021CR4412A. Both orders direct expunction of the covered records under their respective terms.

64. **Continuing pretrial restraints.** The indictment and resulting bond subject Plaintiff Michelle Barrientes Vela to continuing restrictions on her liberty. Only July 21, 2022, the Bexar County District Attorney's Prosecutors, Dawn McCraw and Oscar Salinas requested additional bond hearing based on a alleged incident in Dallas Texas involving Plaintiff, now State Representative 124th Josey Garica and her now Chief of Chief Pharoah Clark. Plaintiff alleges that Josey Garica and then her campaign manager, now Chief of Staff, aggressively approached Plaintiff and that Plaintiff thereafter made a police report concerning the encounter. Pharoah Clark and Josey Garica appeared for the Bexar County District Attorney's office Prosecutors. Plaintiff alleges that the prosecution sought to characterize Josey Garica and Pharoah Clark as witnesses connected to the Plaintiff's pending criminal trial, although neither person was a witness to the conduct underlying the indictment or the charged offenses. No Dallas offense police report, no probable cause affidavit, no arrest warrant, charging instrument, or separate Dallas Report cause number accusing Plaintiff of an offense was presented r identified in the written bond orders three weeks before trial begun. Nevertheless, Judge Velia J. Mesa of the 226th Criminal District Court imposed. The additional conditions confined Plaintiff to Bexar County, excluded her from political events, required weekly reporting to a pretrial service, prohibited alcohol consumption, and required random breathalyzer alcohol testing. As courtroom watchers sat in the gallery of the courtroom Plaintiff further alleges that Judge Velia Meza orally prohibited her from participating in Republican or democratic Party activities and from appearing at voting poll locations, and that Plaintiff was required on a least one occasion to urine testing. These allegations describe the continuing liberty restraints and damages imposed during the criminal proceedings; Plaintiff does not assert a separate claim against Judge Velia Meza, Josey Garica or Pharoh Clark.

65. Texas's two-year personal-injury limitations period generally applies to claims brought under 42 U.S.C. § 1983 in a Texas federal court. See Tex. Civ. Prac. & Rem. Code § 16.003(a). Federal law determines when each federal claim accrues.

66. The Fourth Amendment claim alleging unreasonable seizure pursuant to legal process and the alternative due-process fabrication theory are pleaded as claims that would impugn the criminal prosecution. Under the favorable-termination principles addressed in McDonough v. Smith, 588 U.S. 109 (2019), and Thompson v. Clark, 596 U.S. 36 (2022), Plaintiff must determine the date on which each claim became complete and could first be filed without creating inconsistent criminal and civil judgments.

67. Three potentially relevant termination dates appear in the present record: October 3, 2024, when the Eighth Court of Appeals reversed the convictions and rendered judgments of acquittal; February 19, 2025, when the Texas Court of Criminal Appeals refused the State's petition for discretionary review; and April 9, 2025, when

the appellate mandate issued. The corresponding two-year dates are October 3, 2026, February 19, 2027, and April 9, 2027. Plaintiff does not ask the Court to select among them at the pleading stage. To avoid limitations defense, Plaintiff treats October 3, 2026, as the earliest potential deadline unless governing law and authenticated records establish a later controlling accrual date.

68. Any separate claim based only on an allegedly unauthorized 2019 database inquiry, CAD entry, policy violation, or report-handling event may have accrued when Plaintiff knew or should have known of that discrete injury and therefore may face substantially earlier limitations bar. This complaint does not plead a stand-alone constitutional claim based only on database or policy misuse. Deputy Ryan Rios Escobedo remains included only conditionally, if verified evidence connects a materially false or misleading act by him to legal process and a resulting seizure.

## E. CAUSATION AND PERSONAL PARTICIPATION

69. Accrual must be determined separately for each constitutional claim and each challenged act. In this complaint, Plaintiff limits her damages counts to claims alleging unreasonable seizure pursuant to legal process or fabrication and use of evidence whose success during the prosecution would have impugned the criminal judgment. She does not plead a stand-alone federal claim based solely on a discrete 2019 database inquiry, CAD entry, policy violation, or report-handling event. Plaintiff will treat October 3, 2026, as the earliest potential filing deadline and does not rely on a later termination date, tolling doctrine, or discovery rule unless the governing law and authenticated facts support it.

70. The first identified legal-process document authored by Texas Ranger Bradley Freeman is his September 20, 2019, search-warrant affidavit in Cause No. 2019-W-1548. On January 23, 2020, a grand jury returned the true-bill indictment in Cause No. 2020-CR-0549A. Plaintiff then voluntarily surrendered at the satellite booking and magistrate office, was taken into custody, appeared before a judge, and was required to post $25,000 bail. No separate officer-authored arrest-warrant affidavit has been identified in the presently reviewed materials. The capias or other custody process, booking record, bond, and magistrate paperwork remain necessary to authenticate the precise legal authority, mechanics, and conditions of Plaintiff's custody and release.

71. Plaintiff was later indicted in Cause No. 2021-CR-4408 on two counts of tampering with or fabricating physical evidence. The jury found Plaintiff guilty on both counts. The trial court imposed concurrent six-year terms of imprisonment, suspended the sentences, placed Plaintiff on community supervision for five years, ordered 90 days of incarceration, and imposed a $2,500 fine. These restraints and financial consequences are documented injuries, but Plaintiff must determine which qualifies as Fourth Amendment seizures for Count I and which are recoverable only under another properly pleaded theory.

72. From January 23, 2020, through trial, Plaintiff was required to appear and comply with pretrial release. The written special conditions imposed July 21, 2022, included confinement to Bexar County, exclusion from political events, weekly pretrial-services reporting, abstinence from alcohol, and random alcohol testing. Plaintiff additionally alleges oral restrictions imposed by Judge Velia J. Meza concerning

Republican and Democratic Party participation and presence at voting sites, together with at least one urine test. Those restrictions are pleaded as concrete liberty restraints. Their precise scope and wording must be authenticated through the written orders, certified reporter's record, and available video.

73. Texas Ranger Bradley Freeman's September 20 affidavit is non-testimonial investigative conduct completed before any protected grand-jury or trial testimony. It identifies Texas Ranger Bradley Freeman as the affiant, the issuing judge as the recipient, the assertions used to obtain process, and the resulting office search. For the malicious prosecution count, Plaintiff further alleges that Freeman's investigation, affidavit, evidence collection, and ensuing Ranger packet materially influenced the January 2020 indictment and arrest; the charging records must still confirm the exact transmission and legal-process chain.

## F. WITNESS IMMUNITY AND NON-TESTIMONIAL CONDUCT

74. Trial testimony. A law-enforcement witness has absolute immunity from a claim for damages under 42 U.S.C. § 1983 when the claim is based on testimony given at trial, even when the testimony is alleged to be false. See Briscoe v. LaHue, 460 U.S. 325 (1983). Accordingly, Freeman's August 30, 2022, testimony concerning official oppression, and any other testimony from the witness stand, cannot itself serve as the damages-producing act in Counts I or II.

75. Grand-jury testimony. A grand-jury witness, including a law-enforcement officer who performed or supervised the investigation, has the same absolute immunity from § 1983 damages claims based on grand-jury testimony. See Rehberg v. Paulk, 566 U.S. 356, 367–70 (2012). Plaintiff may not avoid this immunity by alleging a conspiracy to present testimony or by using the immune testimony itself as the actionable statement that initiated the prosecution.

76. Preparatory conduct tied to testimony. Rehberg also protects claims that are merely a means of challenging a witness's testimony, including certain preparatory communications inextricably tied to that testimony. Plaintiff therefore distinguishes ordinary witness preparation from an independently completed investigative wrong and does not treat Texas Ranger Bradley Freeman's meetings or communications with prosecutors, standing alone, as actionable merely because they preceded protected testimony.

77. Distinct non-testimonial pretrial acts. Absolute witness immunity does not automatically extend to independently actionable pretrial conduct merely because the actor later testified. The Fifth Circuit has recognized that non-testimonial pretrial actions, such as fabrication or manipulation of evidence, fall outside absolute witness immunity when the claim rests on the underlying act rather than the later testimony. See Castellano v. Fragozo, 352 F.3d 939, 958 (5th Cir. 2003) (en banc). This distinction is consistent with the functional analysis in Buckley v. Fitzsimmons, 509 U.S. 259 (1993).

## G. QUALIFIED IMMUNITY

78. Governing framework. Qualified immunity shields an official from damages unless the facts show that the official violated a federal right and that the right was clearly established at the time of the challenged act. The right must be defined with factual specificity sufficient to place a reasonable officer on notice; it may not be stated only as a general right to due process, freedom from unreasonable seizure, or freedom from malicious prosecution. See Ashcroft v. al-Kidd, 563 U.S. 731, 735, 742 (2011).

79. Conduct date and later precedent. Most investigative conduct addressed in this complaint occurred in 2019 and the criminal case began no later than the January 23, 2020, arrest. Thompson v. Clark, 596 U.S. 36 (2022), later clarified the favorable-termination requirement for a Fourth Amendment claim commonly described as malicious prosecution. Because Thompson postdates the principal conduct, the clearly established inquiry should focus on the specific older Fourth Amendment rule allegedly violated—not merely the later cause-of-action label.

80. Freeman—falsehoods or omissions affecting legal process. By 2019, it was clearly established that an officer violates the Fourth Amendment by knowingly and intentionally, or with reckless disregard for the truth, including a materially false statement in a warrant affidavit when the false statement is necessary to probable cause. See Franks v. Delaware, 438 U.S. 154, 155–56 (1978); Winfrey v. Rogers, 901 F.3d 483, 494 (5th Cir. 2018). Fifth Circuit authority also applies the Franks framework to material omissions and to an officer who intentionally or recklessly contributes misleading information for use in the affidavit, subject to proof that the corrected affidavit would not establish probable cause.

81. Sheriff Deputy Ryan Rios Escobedo—creation and use of materially false information. By April 2019, it was clearly established that a law-enforcement officer could not knowingly or recklessly provide materially false or misleading information for use in obtaining legal process against an individual. See Franks v. Delaware, 438 U.S. 154, 155–56 (1978); Winfrey v. Rogers, 901 F.3d 483, 494–95 (5th Cir. 2018). It was also clearly established that an officer could not deliberately fabricate evidence and cause that evidence to be used to frame an individual or bring false criminal charges. See Castellano v. Fragozo, 352 F.3d 939, 953–54, 958 (5th Cir. 2003) (en banc). Plaintiff alleges that Deputy Ryan Rios Escobedo violated these protections by knowingly or recklessly creating and entering a materially false official narrative and causing or permitting it to be used in the investigation and ensuing legal process against Plaintiff.

## COUNT I — 42 U.S.C. § 1983

***Fourth Amendment — Unreasonable Seizure Pursuant to Legal Process Against Freeman*** 82. Plaintiff incorporates the preceding paragraphs to the extent consistent with this count.

83. Texas Ranger Bradely Freeman personally conducted and materially advanced the investigation, swore to the September 20, 2019, probable-cause affidavit, obtained and executed the resulting search warrant, collected evidence later used in the charging investigation, and delivered or caused the delivery of his investigative conclusions and evidence to the Bexar County District Attorney's Office.

84. Plaintiff alleges that Freeman knowingly or recklessly created a materially misleading presentation that Plaintiff had concealed, withheld, falsified, or caused the falsification of subpoenaed records. Texas Ranger Bradley Freeman allegedly advanced that presentation even though his own prior contacts and evidence showed that the subpoena covered particular records; Susan Tristan was the records custodian and possessed or controlled the responsive materials; Tristan participated in handling the documents; the original records remained available; Freeman had already received copies of relevant cash-log records; Plaintiff's counsel delivered the requested production; and the evidence involved separate document streams whose origin, custody, and contents required accurate differentiation.

85. Plaintiff further alleges that Freeman omitted or failed to reconcile those facts in September 20, 2019, affidavit and in his non-testimonial investigative submissions to charging authorities. Those omissions allegedly concealed material weaknesses in the propositions that Plaintiff personally concealed evidence, knew that any record was false, or acted with the intent required by the charged offenses.

86. Under a corrected affidavit analysis, the challenged assertions must be removed and the omitted facts added. Plaintiff alleges that the corrected presentation would not establish probable cause because it would show no actual concealment of records that remained known and available, no reliable proof that Plaintiff created or knew of a false entry, and no facts supporting an intent by Plaintiff to impair the investigation. The materiality of each correction will be tested against the certified affidavit, warrant attachments, indictment, appellate record, and charging instruments.

87. Texas Ranger Bradley Freeman's alleged non-testimonial conduct caused or materially influenced legal process against Plaintiff. His September 20, 2019, affidavit produced the search of the Precinct 2 office, and his investigative work and submissions allegedly supplied material information used in obtaining the January 23, 2020, indictment and the process under which Plaintiff surrendered, was arrested, booked, restrained, and subjected to continuing bond conditions. Plaintiff alleges that the prosecutor, grand jury, and judicial officers were not provided with the material corrective facts necessary for a fully informed independent determination, so the intermediary decisions did not break the causal chain.

88. The criminal proceeding terminated in Plaintiff's favor on October 3, 2024, when the Eighth Court of Appeals reversed her conviction and rendered a judgment of acquittal on both counts. The Texas Court of Criminal Appeals refused discretionary review on February 19, 2025, and the mandate issued April 9, 2025. This count rests only on Texas Ranger Bradley Freeman's pretrial, non-testimonial investigative acts and submissions and does not seek damages based solely on grand-jury, trial, or other protected witness testimony.

## COUNT II — 42 U.S.C. § 1983

### *Fourteenth Amendment — Deliberate Fabrication or Use of Materially False Evidence Against Freeman*

89. Plaintiff incorporates the preceding paragraphs to the extent consistent with this count.

90. Plaintiff possessed a clearly established due-process right not to have a law-enforcement officer deliberately fabricate evidence or knowingly use, transmit, adopt, or cause materially fabricated evidence to be used to initiate or maintain criminal proceedings against her. See Castellano v. Fragozo, 352 F.3d 939, 953–54, 958 (5th Cir. 2003) (en banc).

91. Plaintiff alleges that Texas Ranger Bradley Freeman deliberately created, adopted, or caused the use of a materially false investigative account that Plaintiff personally concealed or withheld responsive records, knowingly made or caused a false entry, and acted with intent to impair the investigation. That account allegedly treated separate record categories and document streams as though they were a single body of records under Plaintiff's personal custody and control, while presenting the records as missing, concealed, falsified, or unproduced despite facts known to Freeman concerning Susan Tristan's custodianship and handling, the records' continued availability, Freeman's prior receipt of relevant copies, and counsel's delivery of the requested production.

92. Texas Ranger Bradley Freeman's personal service and clarification of the subpoenas, repeated meetings with Susan Tristan, direct receipt of relevant cash-log copies, knowledge of where the original records were maintained, and receipt or knowledge of the production delivered through Plaintiff's counsel supply the pleaded factual basis for an inference that the disputed account was deliberate rather than a negligent mistake or incomplete investigation. Plaintiff alleges that Freeman thereafter included, transmitted, summarized, adopted, or caused that account to be used in his non-testimonial investigative materials and submissions to charging authorities.

93. Texas Ranger Bradley Freeman incorporated the materially false investigative account into his September 20, 2019, probable-cause affidavit and his non-testimonial investigative materials. The affidavit caused issuance of the search warrant, and Freeman subsequently delivered or caused delivery of his investigative conclusions and collected evidence to the Bexar County District Attorney's Office. Plaintiff alleges that the materially false account was thereby used to initiate and maintain the criminal proceedings and materially contributed to her indictment, surrender, custodial arrest, bond restrictions, prosecution, trial, and resulting loss of liberty. This count challenges Freeman's pretrial fabrication, adoption, and transmission of evidence—not protected grand-jury or trial testimony.

**COUNT III — 42 U.S.C. § 1983**

***Fourth Amendment — Unreasonable Seizure Pursuant to Legal Process Against Escobedo*** 94. Plaintiff incorporates the preceding paragraphs to the extent consistent with this count.

95. Deputy Ryan Rios Escobedo's General Police Report identifies him as reporting officer, author, and entering officer under badge 34967 and states, "I was dispatched to Rodriguez Park" and "Upon my arrival Jesus Reyes stated that he was harassed by Michelle B. Vela." Plaintiff alleges that these assertions created a materially false or misleading firsthand-response account because the internal investigator concluded that 2C11 originated the call, was nowhere near Rodriguez Park when the key card was

requested, could not have been flagged down there, and knew whom he intended to contact. Although the investigator inferred that 2C11 went elsewhere "to meet/speak with Mr. Reyes," Plaintiff disputes that inference and alleges Escobedo never met or spoke with Reyes. Plaintiff's observations and Cpl. Peña's report further contradicts an Deputy Ryan Rios Escobedo arrival or interview at the park.

96. Those circumstances support a reasonable inference that Deputy Ryan Rios Escobedo knew or recklessly disregarded that his report falsely represented a contemporaneous dispatch, arrival, and firsthand interview at Rodriguez Park and supplied apparent independent law-enforcement corroboration concerning Plaintiff. Because the report described Escobedo's own location and personal actions, whether he arrived and conducted the reported interview was necessarily within his knowledge. Plaintiff does not base this claim merely on inaccurate CAD status, poor report writing, a database query, or a violation of (BCSO) Bexar County Sheriff Office policy.

97. Texas Ranger Bradley Freeman's September 20, 2019, probable-cause affidavit expressly states that a (BCSO) Bexar County Sheriff Office incident report concerning Rodriguez Park caused him to request Precinct 2 records. It describes the same event, location, people, security dispute, alleged harassment or intimidation, and asserted early departure described in Deputy Ryan Rios Escobedo's General Report, BCSO-2019-0749798. Plaintiff therefore alleges that Deputy Escobedo's report, or its materially false contents, was received and used by Texas Ranger Bradley Freeman to initiate or materially advance the investigation and ensuing legal process.

98. By knowingly or recklessly placing the materially false firsthand account in an official law enforcement record for investigative use, Escobedo set in motion a foreseeable chain that materially advanced Freeman's investigation and supplied information or investigative fruits used in later legal process. Deputy Ryan Rios Escobedo knew or reasonably understood that an official incident report concerning alleged misconduct by an elected constable would be reviewed and relied upon in an ensuing criminal investigation. Plaintiff alleges that Deputy Ryan Rios Escobedo personally contributed false information and that the contribution was material to legal process resulting in Plaintiff's seizure.

99. The report's authorship, its matching event and accusations, Texas Ranger Bradley Freeman's express reliance on a Bexar County Sheriff (BCSO) Rodriguez Park incident report, and the contemporaneous location and dispatch evidence support a reasonable inference that Escobedo's materially false narrative entered and influenced the legal process. The native incident record, metadata, access and export history, Ranger investigative file, and prosecutorial intake records documenting the detailed transmission path are maintained by Bexar County Sheriff Office, Department of Public Safety, and prosecuting authorities and are not presently accessible to Plaintiff.

**COUNT IV — 42 U.S.C. § 1983**

***Fourteenth Amendment — Deliberate Fabrication or Use of Materially False Evidence Against Escobedo***

100. Plaintiff incorporates the preceding paragraphs to the extent consistent with this count.

101. Plaintiff possessed a clearly established due-process right not to have a law-enforcement officer deliberately fabricate evidence or knowingly create, adopt, transmit, or cause materially fabricated evidence to be used to initiate or maintain criminal proceedings against her. See Castellano v. Fragozo, 352 F.3d 939, 953–54, 958 (5th Cir. 2003) (en banc).

102. Sheriff Deputy Ryan Rios Escobedo's General Report identifies him as reporting officer, author, and entering officer under badge 34967. Escobedo represented that he was dispatched to Rodriguez Park, arrived there, and personally obtained Jesus Reyes's account concerning Plaintiff. These were representations about Escobedo's own actions and therefore matters necessarily within his personal knowledge.

103. Plaintiff alleges that Deputy Ryan Rios Escobedo's representations were deliberately fabricated or made with reckless disregard for their truth. The contemporaneous dispatch audio, CAD information, AVL records, and Internal Investigation No. 2019-IA-000110 show that unit 2C11 originated the request for a key card, was not at Rodriguez Park when that request was made, could not have been flagged down there, and already knew whom Escobedo intended to contact. Plaintiff further alleges that Deputy Ryan Rios Escobedo never met or spoke with Reyes at Rodriguez Park or elsewhere. Cpl. Peña's contemporaneous report and Plaintiff's observations further contradict Escobedo's asserted arrival and interview. Because Escobedo necessarily knew whether he had personally arrived and conducted the reported interview, these facts support a reasonable inference of deliberate fabrication rather than negligence, misunderstanding, or poor report writing.

104. Texas Ranger Bradley Freeman's September 20, 2019, probable-cause affidavit expressly states that a (BCSO) Bexar County Sheriff Office incident report concerning Rodriguez Park caused him to request Bexar County Constable Office Precinct 2 records. Texas Ranger Bradley Freeman's description identifies the same event, location, people, security dispute, alleged harassment or intimidation, and asserted early departure described in Deputy Ryan Rios Escobedo's General Police Report, BCSO-2019-0749798. Plaintiff therefore alleges that Deputy Ryan Rios Escobedo's police report, or its materially false contents, was received and used by Texas Ranger Bradley Freeman to initiate or materially advance the investigation and ensuing legal process. The report's authorship, matching subject matter, and Freeman's express reliance on a (BCSO) Bexar County Sheriff Rodriguez Park incident police report provide the factual basis for that inference. Detailed transmission, access, export, and receipt records are maintained by Bexar County Sheriff Office, Department of Public Safety and prosecuting authorities and are not presently accessible to Plaintiff.

105. This court challenges Deputy Ryan Rios Escobedo's pretrial, non-testimonial fabrication, entry, and transmission of materially false evidence. It is pleaded in the alternative to Count III to the extent the same conduct implicates distinct Fourteenth Amendment and Fourth Amendment protections. Plaintiff does not seek duplicative recovery.

## DAMAGES

106. As a direct and proximate result of each Defendant's proven constitutional conduct, Plaintiff suffered loss of liberty beginning on January 23, 2020. Plaintiff voluntarily surrendered at the satellite office and was then taken into custody, handcuffed in front, shackled at the ankles, booked, brought before a judge, required to post or remain subject to a $25,000 bond, and subjected to continuing pretrial restraints. Those restraints included reporting to a pretrial-services officer, restrictions on leaving Bexar County, prohibitions affecting participation in Republican and Democratic Party activities and presence at voting locations, alcohol prohibitions, random alcohol screening, and at least one degrading urine test. Plaintiff also experienced a public courthouse escort before assembled media while restrained. She does not attribute the selected escort route or media presence to a particular Defendant unless evidence establishes that Defendant's personal involvement.

107. Plaintiff Michelle Barrientes Vela suffered humiliation, embarrassment, emotional distress, mental anguish, fear, anxiety, loss of dignity, disruption of family and personal relationships, and damage to her personal, professional, political, and law-enforcement reputation. She also alleges loss of employment, diminished career opportunities, impairment of earning capacity, lost income and benefits, and other financial harm, but seeks recovery only for losses proven to have been proximately caused by a Defendant's actionable conduct rather than by an independent lawful cause.

108. Plaintiff was required to retain and pay criminal-defense counsel, appellate counsel, experts, investigators, and other professionals, and to incur transcript, record-preparation, filing, court, travel, expunction, and related expenses in defending the prosecution and obtaining the reversal and judgment of acquittal. She seeks the reasonable and necessary amounts she personally paid or became legally obligated to pay, including trial-level and appellate expenses, to the extent the law permits their recovery as compensatory damages and the evidence establishes proximate causation.

109. Plaintiff seeks nominal damages for each completed constitutional violation if the violation is proven but a corresponding amount of actual compensatory injury is not established.

110. Plaintiff seeks punitive damages separately against Texas Ranger Bradley Freeman and Deputy Sheriff Ryan Rios Escobedo in their individual capacities upon proof that the Defendant acted with evil motive or intent or with reckless or callous indifference to Plaintiff's federally protected rights. Punitive damages are not sought against Department of Public Safety, Bexar County Sheriff Office, or any governmental entity.

111. Plaintiff seeks taxable costs and, if represented by counsel or otherwise legally entitled, reasonable attorney's fees and litigation expenses incurred in this federal civil action under 42 U.S.C. § 1988. Plaintiff recognizes that fees for her own pro se work are not pleaded as recoverable attorney's fees. Any § 1988 fees for this civil action are distinct from criminal defense and appellate expenses sought, where legally

recoverable, as compensatory damages caused by the underlying constitutional violations.

## PRAYER FOR RELIEF

112. Plaintiff respectfully requests judgment against Texas Ranger Bradely Freeman and Deputy Sheriff Ryan Rios Escobedo only in their individual capacities and only for each Defendant's proven personal conduct, awarding: (a) compensatory damages in an amount determined by the jury; (b) nominal damages for each proven constitutional violation for which actual damages are not established; (c) punitive damages against the individual Defendant whose conduct satisfies the governing standard; (d) taxable costs; (e) qualifying attorney's fees and litigation expenses under 42 U.S.C. § 1988 if legally available; (f) prejudgment and post judgment interest as allowed by law; and (g) all other relief the Court determines to be lawful and appropriate. Plaintiff does not seek duplicative recovery for the same injury.

## JURY DEMAND

113. Under Federal Rule of Civil Procedure 38 and the Seventh Amendment, Plaintiff demands a trial by jury on every claim and issue for which a jury trial is available.

**RESPECTFULLY SUBMITTED**

______________________________

MICHELLE BARRIENTES VELA
Plaintiff, Pro Se
P.O. Box 380392
San Antonio, Texas 78268
Telephone: ________________
Email: michellebvelaforsheriff@gmail.com

Date: 9-8-26